United States District Court
Southern District of Texas
**ENTERED**
April 04, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JOSE V. CAMPOS, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 7:15-CV-70 |
| § | |
| DONNA INDEPENDENT SCHOOL § | |
| DISTRICT, *et al*, § | |
| § | |
| Defendants. § | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.    Factual and Procedural Background**

Now before the Court are the following Motions: (1) Motion for Summary Judgment filed by Defendants Donna Independent School District ("the ISD") and Albert Sandoval, Tomasa Ramos, Nick Castillo, Eloy Infante, and Elpidio Yanez, individually and in their official capacities as members of the ISD Board of Trustees (Dkt. No. 22); and (2) Motion for Partial Summary Judgment filed by Plaintiffs Martha Orozco, Francisco A. Cuellar, Arturo Castillo, Sr., and Javier Garza (also referred to herein as "Movants") (Dkt. No. 24).  In their Second Amended Original Complaint, the live pleading, Movants and additional Plaintiffs Jose V. Campos and Linda Garza complain that Defendants demoted them and reduced their pay in violation of Plaintiffs' rights to due process and freedom of speech and association under the First and Fourteenth Amendments to the U.S. Constitution.  (Dkt. No. 16 at §§ VI, VII).  Plaintiffs allege that a November 2014 election resulted in the seating of a "new school board political majority" referred to as the "Sandoval faction," who directed the ISD Superintendent to effectuate the demotions and pay-cuts due to Plaintiffs' opposition to the new majority during the election

campaign. *Id.* at § IV. Pursuant to Board directive, all but Campos and Linda Garza received pay-cuts that were retroactively applied. *Id.* In addition to alleging that Defendants are liable for the asserted constitutional violations pursuant to 42 U.S.C. § 1983, Campos claims that he was demoted because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), and the Plaintiffs who received the retroactive pay-cuts allege that Defendants violated the Fair Labor Standards Act ("FLSA"). *Id.* at §§ V-X. The initial paragraphs of Plaintiffs' complaint also reference Title VII of the Civil Rights Act of 1964. *Id.* at ¶¶ 1.1, 2.1.

On September 9, 2015, Defendants filed a motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(6), requesting dismissal of: (1) any claims brought by Plaintiffs under Title VII; and (2) Plaintiffs' § 1983 claims asserting due process violations and municipal liability. (Dkt. No. 17). In its Order dated October 26, 2015, the Court: (1) granted the motion with respect to any claims brought by Plaintiffs under Title VII; and (2) denied the motion with respect to Plaintiffs' due process claims, finding that Plaintiffs had sufficiently alleged the "notice," "hearing," and "official policy" requirements challenged by the motion. (Dkt. 21).

Through the instant Motions, Defendants seek summary judgment on Plaintiffs' due process, ADEA, and FLSA claims and requests for future lost earnings and exemplary damages, and the Plaintiffs who received the retroactive pay-cuts request summary judgment on their due process claims. (Dkt. Nos. 22, 24).[1] Upon consideration of the Motions, summary judgment evidence, and responsive briefing (Dkt. Nos. 28, 31, 32, 33, 34), in light of the relevant law, the Court finds that Defendants' Motion must be granted in part, and Plaintiffs' Motion granted in its entirety, for the following reasons.

## II. Summary Judgment Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any

---

[1] No party moves for summary judgment on Plaintiffs' § 1983 First Amendment claims.

material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

### III. § 1983 Due Process Claims

#### A. Plaintiffs Orozco, Cuellar, Castillo, and Javier Garza's Claims

The Court first turns to the claims on which both sides seek summary judgment:

Movants' claims that Defendants violated their right to procedural due process by retroactively reducing their pay without the requisite notice and a hearing. (Dkt. Nos. 22, 24). The summary judgment record establishes that at the time of the alleged demotions and reductions in pay, Orozco and Cuellar were "at-will" employees with the ISD, and Castillo and Javier Garza were employed for the 2014-2015 school year under 12-month term contracts. (Dkt. No. 24, Exhs. C-1, D-1; Dkt. No. 28, Exh. 1 at p. 61; Exh. 2 at pp. 31, 43-44; Exhs. 3, 4). By letter dated December 16, 2014, ISD Superintendent Jesus Rene Reyna advised Movants of their "reassignments" to new positions, and that their number of work days and pay would not change for the remainder of the school year. (Dkt. No. 24, Exhs. A-D). By letter dated January 26, 2015, after Movants had worked 16 days in their new positions at the same pay, the Superintendent informed them that "as per Board action taken on January 13, 2015," their pay would be decreased effective January 5, 2015. *Id.*

To prevail on a Fourteenth Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)) (internal quotations omitted). Whereas Defendants' Motion takes the position that no Plaintiff can identify such an interest, Castillo and Garza each asserts that he had a property interest in "his salary during the term of his contract," and all four Movants claim a property right to "the wages [they] had already earned from January 5, 2015 to January 26, 2015." (Dkt. Nos. 22, 24). "To enjoy a property interest in employment, an employee must 'have a legitimate claim of entitlement' created and defined 'by existing rules or understandings that stem from an independent source such as state law....'" *Gentilello*, 627 F.3d at 544 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972));

*see also Am. Fed'n of Gov't Emps., AFL-CIO v. Stetson*, 640 F.2d 642, 645 (5th Cir. 1981) (legitimate claim of entitlement "is not created by the due process clause; if it exists it is created either by contract or by federal, state or local law").

Under Texas law, "[u]nless a contract exists to alter [employees'] at-will status, [they] have only a unilateral expectation of continued employment, leaving them without a protected property interest." *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 439 (5th Cir. 2001). Thus, the at-will employee Movants—Orozco and Cuellar—have no property interest in their continued employment, and the contracts under which Castillo and Garza were employed demonstrate only a property interest in their continued employment during the 12-month contract term. Castillo and Garza claim an interest in a uniform salary during that term, but as Defendants point out, the contracts themselves contain no assurances of a specified position or salary. (Dkt. Nos. 22, 28, 32). In fact, the contracts state that the ISD: (1) "shall have the right to assign or reassign the Employee to positions, duties, or additional duties and to make changes in responsibilities, work, or transfers at any time during the contract term"; and (2) "shall pay the Employee according to the compensation plan adopted by the Board." *E.g.*, (Dkt. No. 24, Exhs. C-1, D-1 at ¶¶ 4, 5). Defendants present evidence that the retroactively imposed salary for Castillo and Garza was within the range set for their new positions by the Board's compensation plan in effect for the 2014-2015 school year. *See* (Dkt. No. 24, Exhs. C-3, D-3; Dkt. No. 28, Exh. 7).[2] The Court agrees with Defendants that the contracts themselves do not give rise to a legitimate claim of entitlement to a uniform rate of pay within that range.

Nonetheless, Plaintiffs appear to allege that ISD policy provides an independent source for Castillo and Garza's asserted property interest, and attach what they allege to be excerpts

---

[2] Defendants' exhibit demonstrates the same with respect to Orozco and Cuellar. *See* (Dkt. No. 24, Exhs. A-2, B-2; Dkt. No. 28, Exh. 7).

from "Donna ISD Board Policy DCE (Legal)" and "Donna ISD Board Policy DEA (Legal)." (Dkt. No. 31). Excerpts from the "DCE" Policy pertain to contract termination and nonrenewal, and are therefore irrelevant with respect to the due process interests asserted, and excerpts from the "DEA" Policy post-date the reassignment/pay-cut decisions. (Dkt. No. 31; *see* Exhs. B, F, G; Exh. H at Exhs. 2, 3). Nonetheless, the Court recognizes that the purported DEA Policy contains a provision entitled "Decreasing Pay," which provides:

> [A] district may reduce educator compensation if it gives sufficient warning of a possible reduction in pay when educators can still unilaterally resign from their contracts. A sufficient warning must be both formal enough and specific enough to give educators a meaningful opportunity to decide whether to continue employment with a district.

(Dkt. No. 31, Exh. G; Exh. H at Exh. 3).[3] This provision appears to require Castillo and Garza's compensation at a uniform rate of pay during the contract term unless the ISD gives sufficient warning of a reduction, and clearly, the retroactive reductions in their pay did not provide such warning. In any event, with respect to the property interest claimed by *all* Movants, it is clear that they had a legitimate claim of entitlement to wages already earned at a specified rate—that is, to wages that had, in essence, already become their property. The Court will therefore proceed to the other disputed element of Movants' due process claims: that they were deprived of their interest in a uniform salary for the contract term, and/or in the wages they earned from January 5, 2015 to January 26, 2015, without the process due.

"While state law determines whether a claimant has a property interest, federal law determines the minimum procedures constitutionally required." *Helton v. Clements*, 832 F.2d 332, 337 (5th Cir. 1987) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). "Procedural due process is a flexible concept whose contours are shaped by the nature of the individual's and the state interests in a particular deprivation." *Caine v. Hardy*, 943 F.2d 1406,

---

[3] This provision is irrelevant with regard to Orozco and Cuellar, whose employment was not governed by any contract.

1411-12 (5th Cir. 1991). "Ordinarily, government may effect a deprivation only *after* it has accorded due process, but the necessary amount and kind of pre-deprivation process depends upon an analysis of three factors": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 1412 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (emphasis in original). In *Loudermill*, the U.S. Supreme Court balanced the competing interests at stake in the context of employees facing termination for cause. *Loudermill*, 470 U.S. at 542-45. The Court determined that if the employer provides a full post-termination hearing, pre-termination due process need only consist of "oral or written notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546-48; *Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993); *see also Caine*, 943 F.2d at 1412 (brief pre-termination hearing "may consist of no more than a meeting at which the employer states the grounds for dismissal and gives the employee an opportunity for rebuttal," but is only satisfactory if "coupled with more formal post-termination proceedings").

The record is undisputed that Movants received no notice, nor were they provided any opportunity for a hearing, prior to the mid-year, retroactive reductions in their pay. *See* (Dkt. No. 24, Exh. C at ¶ 4; Exh. D at ¶ 4; Exh. G at p. 34; Exh. H at p. 36; Exh. I at p. 49). However, Defendants take the position that the availability of a *post*-deprivation remedy—the ISD's grievance policy to which no Movant resorted—precludes the claim that they were deprived of procedural due process. (Dkt. No. 32; *see* Exh. F-1). In the primary case to which Defendants

cite for support, *Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir. 1989), the plaintiff was aware of her right to pursue a grievance over her proposed demotion by the city, but instead entered into a settlement agreement forgoing that right. *See id.* at 838 n.2. When she suspected that the city personnel director was not living up to the agreement—later found by the jury to have been fraudulently induced—she again chose not to file a grievance, and instead brought suit under § 1983. *See id.* at 839. The Fifth Circuit held that the plaintiff had not been deprived of procedural due process "because she failed to resort to the city's grievance procedure for a remedy," reasoning in part that

> [t]echnically, [the plaintiff's] right to insist upon a hearing before demotion was thwarted when her voluntary demotion was procured by fraud. This is a judgment rendered purely in hindsight, however, for if [the city personnel director] had carried through with her promises, the settlement would have been satisfactory to [the plaintiff]. We should be reluctant to discourage compromise of public employer-employee disputes by suggesting that whenever such a dispute is resolved informally in order to forestall formal hearing procedures, the failure of this process to satisfy the employee automatically threatens a procedural due process violation. Rather, *we must consider the acts that follow the parties' informal agreement and the procedural remedies then available*. Here, [the plaintiff] admitted that she could have pursued a grievance…for…failure to comply with [the] agreement.

*Id.* (emphasis added). The Fifth Circuit has since described *Rathjen* as standing for the proposition that "a party may waive his or her normal rights to procedural due process in the form of a settlement agreement," and that once waiver has occurred, the party's "remedies then become the procedures under state law available for enforcing the agreement." *Buckley v. Natchez-Adams Sch. Dist.*, 68 F.3d 472, at *2 (5th Cir. 1995) (no procedural due process violation where state procedures were available to superintendent, but not utilized, to enforce settlement agreement in which he waived his right to contest the proposed nonrenewal of his employment contract). Movants in this case were never afforded the opportunity for a pre-deprivation hearing and did not waive their right to it, through settlement or otherwise. Therefore, the availability of

a post-deprivation grievance is not fatal to Movants' due process claims.[4]  Rather, the more appropriate framework is provided by *Loudermill*, under which some kind of hearing is required before an employee may be deprived of a property interest in his job, even where a post-deprivation remedy exists.

In sum, the record establishes that the retroactive reductions in pay deprived Movants of a property interest without the process due.  Accordingly, the Court must deny Defendants' request for summary judgment on Movants' procedural due process claims.  Apart from their generalized challenge to the Board member Defendants' individual liability under § 1983, discussed *infra*, Defendants do not otherwise dispute liability under § 1983 for any due process violation connected to the retroactive pay-cuts.  Therefore, the Court will grant summary judgment in Movants' favor on their procedural due process claims against all Defendants.

B.    **Plaintiffs Campos and Linda Garza's Due Process Claims**

Defendants also move for summary judgment on Plaintiffs Campos and Linda Garza's due process claims. (Dkt. No. 22).  Like Castillo and Javier Garza, Campos and Linda Garza were employed by the ISD for the 2014-2015 school year pursuant to 12-month term contracts informing them of the ISD's "right to assign or reassign [the employee] to positions, duties, or additional duties and to make changes in responsibilities, work, or transfers, at any time during the contract term," and that promised only compensation in accordance with the Board's approved plan. (Dkt. No. 22, Exhs. E, H at ¶¶ 5, 6).  These Plaintiffs were also informed, by letter dated December 16, 2014, of their reassignments to other positions with the ISD, and that

---

[4]  Defendants cite to two other cases that rely on *Rathjen*, but neither is persuasive.  In *Vicari v. Ysleta Indep. Sch. Dist.*, 291 F. App'x 614, 616 (5th Cir. 2008), the plaintiff's failure to invoke the available grievance procedure *prior* to her salary reduction precluded her procedural due process claim—a scenario not at issue here, since no pre-deprivation remedy was even available to Movants—and in *Juarez v. Brownsville Indep. Sch. Dist.*, 2010 WL 1667788, at *11-13 (S.D. Tex. Apr. 23, 2010), the district court overstated *Rathjen*'s holding.

their number of work days and salary would not change for the duration of the school year. (Dkt. No. 32, Exh. A-1). Unlike the other four Plaintiffs, Campos and Linda Garza did *not* receive a pay-cut during the contract term. *See* Dkt. No. 16 at ¶ 4.14. For the reasons explained *supra*, the Court finds that the language in the contracts precludes a finding that Campos and Linda Garza had a property interest in a specific job, and Plaintiffs point to no source giving rise to a legitimate claim of entitlement to employment past the contract term. In the absence of a cognizable property interest of which they were deprived, Campos and Linda Garza's due process claims fail and Defendants' request for summary judgment on those claims must be granted.

### IV.     Plaintiff Campos's ADEA Claim

Defendants move for summary judgment on Plaintiff Campos's claim for age discrimination against the Defendant Board members in their individual capacities, correctly pointing out that the ADEA provides no basis for individual liability. (Dkt. No. 22); *see Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001). Campos responds that he is not seeking damages from the Board member Defendants sued individually; rather, he seeks exemplary damages from the ISD under the ADEA. (Dkt. No. 31). So characterized, Campos's age discrimination claim must be dismissed and Defendants' Motion granted, as punitive damages are not available under the ADEA. *See* (Dkt. No. 32); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 741 (S.D. Tex. 2014) (citing *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir.1977)).

### V.     Plaintiffs Orozco, Cuellar, Castillo, and Javier Garza's FLSA Claims

Defendants' Motion submits that 29 U.S.C. §§ 216(b) and 215(a)(3), the asserted statutory bases for the FLSA claims brought by the Plaintiffs who received retroactive pay-cuts, do not fit with the allegations or evidence in this case, since the record contains no indication that

these Plaintiffs were paid below the minimum wage, or that Defendants discharged or otherwise discriminated against them for making an FLSA complaint. (Dkt. No. 22); *see* (Dkt. No. 16 at § X); 29 U.S.C. §§ 216(b), 215(a)(3). Plaintiffs' response concedes that they have no FLSA claim, and the Court will enter summary judgment in Defendants' favor. (Dkt. No. 31).

**VI.     Claims against Defendants in Their Individual Capacities**

Defendants also move for summary judgment on Plaintiff's § 1983 claims against the five Defendant Board members in their individual capacities, taking the position that these Defendants "could not have and did not affect any rights of the Plaintiffs with respect to their employment and reassignments because they lacked the authority and ability to do so individually (as opposed to a collective Board)." (Dkt. No. 22). Plaintiffs' response attaches the testimony of Superintendent Reyna, in which he attests that he ordered the preparation of the December 16, 2014 letters of reassignment at the urging of the five Board member Defendants, who were "getting a lot of heat" from their political supporters to make these and other changes. (Dkt. No. 31, Exh. H at pp. 14-16, 28-29, 33-39; *see also*, *e.g.*, Exh. A-2). Reyna's testimony and the January 26, 2015 letters further indicate that the retroactive pay-cuts were approved by the Board, through the voting majority consisting of the five individual Defendants, at the Board meeting on December 13, 2014, and that the Superintendent notified Plaintiffs of the pay-cuts in those letters. *Id.* at Exh. H at pp. 16-17; *see also*, *e.g.*, Exh. A-3. Reyna testified that he opposed the retroactive pay-cuts, and the remaining two Board members, Jose E. Lugo and Efren Cerniceros, testified that they voted against them. *Id.* at Exh. H at p. 17; Exh. I at pp. 35-36; Exh. J at pp. 39-40.

The parties cite to well-settled case law regarding municipal and individual liability under § 1983, but not to any precedent directly addressing Defendants' argument. The Court's prior

order also addressed what is well-settled—that is, that the ISD is only liable under the theory of municipal liability "for the unconstitutional conduct of its policymakers, including persons to whom it has delegated policymaking authority in certain areas." (Dkt. No. 21); *Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978)). Under Texas law, which determines the question, a school district's board of trustees has exclusive, final policymaking authority for the district, and more specifically, for district personnel decisions. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing TEX. EDUC. CODE § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district.")); *Barrow*, 480 F.3d at 381-82 (explaining that "Texas's legislative scheme…generally makes the board the policymaker and the superintendent the head administrator," and finding that "it is the board, not the superintendent, which has policymaking authority" in personnel decisions).

Here, the alleged constitutional injuries concern two personnel decisions adverse to Plaintiffs: (1) the decision to reassign all six Plaintiffs; and (2) the decision to retroactively reduce the pay of four of the Plaintiffs. With respect to the latter decision, the record indicates that the decision was made by the policymaker Board, in which case the ISD is potentially liable under the theory of municipal liability. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993) (for municipality to be liable, challenged decision must be made by official with final policymaking authority). The record indicates that the individual Board members' role in this decision was to place the item on the Board agenda, and to vote on it. To establish individual liability under § 1983, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the

constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). The Court recognizes that no Board member could have accomplished the retroactive pay-cuts, either alone or in concert, absent the authority given to the Board itself. *See* TEX. EDUC. CODE § 11.051(a-1) ("Unless authorized by the board, a member of the board may not, individually, act on behalf of the board. The board of trustees may act only by majority vote of the members present at a meeting held in compliance with Chapter 551, Government Code, at which a quorum of the board is present and voting."). However, they were certainly "involved" in the decision, and their actions bore a causal relationship to it—they formed the Board majority that approved the decision. Defendants have pointed to no authority, and the Court can locate none, foreclosing a claim of individual liability under these circumstances. In *Anderson*, the Fifth Circuit held that the plaintiff, a longtime school district employee, had sufficiently pleaded the causation requirement of his First Amendment claims against the superintendent and board members whose alleged retaliatory decisions were made "in closed meetings that precluded [the plaintiff] from knowing, prior to discovery, *whether each defendant voted for or dissented from those decisions*." *Anderson*, 184 F.3d at 443-44 (emphasis added). Here, where discovery has produced evidence that the Board member Defendants constituted the voting bloc that orchestrated and approved the alleged retaliatory pay-cuts, the Court finds that individual liability may attach for their roles in that decision.

With respect to the reassignments, the record contains evidence that the Superintendent made the decision to reassign Plaintiffs at the recommendation of the individual Board member Defendants, and with knowledge of the alleged retaliatory animus underlying that recommendation. Although Defendants do not raise the issue, the Court observes that the Superintendent's status as the final "decisionmaker" would call into question the ISD's liability

for the reassignments. *See Jett*, 7 F.3d at 1246, 1251 (since policymaking authority rested with school district board of trustees, no municipal liability for superintendent's decision to transfer employee). However, the individual Defendants could still be held liable; although recognizing tension in its precedent, the Fifth Circuit recently observed that "[i]t can at least be said that before [the defendant] could be individually liable despite not being the final decision-maker, it must be shown that her recommendation was made in retaliation for constitutionally protected speech and was the reason the adverse employment decision was made by the final decisionmaker." *Culbertson v. Lykos*, 790 F.3d 608, 626 (5th Cir. 2015).[5] The record at least raises a fact issue as to whether these requirements are met.

Accordingly, the Court finds that it may not grant summary judgment for the reasons advanced by Defendants.

## VII. Requests for Relief

### A. Lost Earnings

Defendants also seek summary judgment on any request by Plaintiffs for lost earnings in the future as compensatory damages, arguing that the at-will employee Plaintiffs had no guarantee of continued employment, and the contractual employee Plaintiffs had no guarantee past the 12-month term of their contracts. (Dkt. No. 22). Plaintiffs' response acknowledges that they cannot recover damages for future lost earnings, in which case the Court will grant Defendants' request for summary judgment on any such request. (Dkt. No. 31).

### B. Exemplary Damages

Finally, Defendants seek summary judgment on Plaintiffs' request for an award of

---

[5] If the evidence were to demonstrate that the Board as a whole (with the individual Defendants as the voting majority) formally approved the Superintendent's decision, then for the reasons explained *supra*, municipal liability may attach and the individual Defendants' involvement in advancing that decision could also subject them to liability.

exemplary damages under § 1983, pointing out that such relief is not available against the ISD, and arguing that the record establishes that the individual Defendant Board members' actions did not rise to the level necessary to justify an exemplary damage award. (Dkt. No. 22); *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (municipality is immune from punitive damages under § 1983); *Smith v. Wade*, 461 U.S. 30, 51 (1983) ("reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, [are] sufficient to trigger a jury's consideration of the appropriateness of punitive damages" under § 1983 against individual defendants). Plaintiffs' response clarifies that they are not seeking this relief from the ISD, and the Court finds that summary judgment must be granted on any such request. (Dkt. No. 31). In light of the retroactive nature of one of the adverse actions, and Superintendent Reyna's testimony regarding the Board member Defendants' efforts to reward their own political supporters with jobs, promotions, and salary increases, and to reassign and reduce the pay of those employees (including Plaintiffs) who did not support them during the election,[6] the Court finds that Defendants' Motion is not the appropriate vehicle for precluding Plaintiffs' request for exemplary damages from the individual Defendants.

### VIII. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and Plaintiffs Orozco, Cuellar, Castillo, and Javier Garza's Motion for Partial Summary Judgment is **GRANTED**, as follows:

- Defendants' requests for summary judgment on (1) Plaintiffs Campos and Linda Garza's § 1983 procedural due process claims, (2) Plaintiff Campos's ADEA claim, (3) Plaintiffs

---

[6] *See* (Dkt. No. 31, Exh. H).

Orozco, Cuellar, Castillo, and Javier Garza's FLSA claims, (4) any request for future lost earnings, and (5) any request for exemplary damages from the Defendant ISD, are **GRANTED**;

- Defendants' requests for summary judgment on (1) Plaintiffs Orozco, Cuellar, Castillo, and Javier Garza's § 1983 procedural due process claims, (2) Plaintiffs' remaining § 1983 claims against the individual Defendants, and (3) Plaintiffs' request for exemplary damages against the individual Defendants, are **DENIED**; and

- Plaintiffs Orozco, Cuellar, Castillo, and Javier Garza's request for summary judgment on their § 1983 procedural due process claims against all Defendants is **GRANTED**.

SO ORDERED this 4th day of April, 2016, at McAllen, Texas.

_____
Randy Crane
United States District Judge